# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CR No. 3:04-CR-240-G |
| | § | |
| HOLY LAND FOUNDATION | § | |
| FOR RELIEF AND DEVELOPMENT | § | |
|     also known as the "HLF"(1) | § | |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMED EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| MUFID ABDULQADAR (7) | § | |
| ABUDULRAHAM ODEH (8) | § | |

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR EQUITABLE RELIEF FROM THE GOVERNMENT'S PUBLIC NAMING OF THEM AS UNINDICTED CO-CONSPIRATORS**

Hina Shamsi
L. Danielle Tully
Jameel Jaffer
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
HShamsi@aclu.org
Tel: (212) 549-2500
Fax: (212)-549-2583

Lisa Graybill
Legal Director
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
P.O. Box 12905
Austin, TX 78711
LGraybill@aclutx.org
Tel: (512) 478-7300 x 116
Fax: (512) 478-7303

David Broiles, Local Counsel
CAGLE AND BROILES
100 N. Forest Park, Suite 220
Ft. Worth, TX 76102
Tel. (817) 335-3311
Fax: (817) 335-7733

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………..i

INTRODUCTION……………………………………………………………………………1

PETITIONERS……………………………………………………………………………...3

BACKGROUND…………………………………………………………………………...5

ARGUMENT……………………………………………………………………………8

    I.    THE GOVERNMENT VIOLATED PETITIONERS' FIFTH AMENDMENT
    RIGHTS WHEN IT PUBLICLY NAMED THEM AS UNINDICTED CO-
    CONSPIRATORS…………………………………………………………………...8

    II.    NONE OF THE INTERESTS THE GOVERNMENT HAS ASSERTED
    JUSTIFIES THE GOVERNMENT'S DECISION TO PUBLICLY IDENTIFY
    PETITIONERS AS UNINDICTED CO-CONSPIRATORS……………………14

    III.    THIS COURT HAS THE AUTHORITY TO REMEDY THE GOVERNMENT'S
    VIOLATION OF PETITIONERS' FIFTH AMENDMENT RIGHTS BY
    GRANTING PETITIONERS EQUITABLE RELIEF……………………...………19

CONCLUSION…………………………………………………………………………..21

# TABLE OF AUTHORITIES

## Cases

*Application of Jordan*, 439 F.Supp. 199 (S.D. W.Va. 1977) .......................................................... 8

*Board of Regents v. Roth*, 408 U.S. 564 (1972) ........................................................................ 12

*Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) ................................................ 8

*Bourjaily v. United States*, 483 U.S. 171 (1987) ...................................................................... 16

*Delpit v. Beckner*, 481 F. Supp. 42 (M.D. La. 1979) ................................................................... 8

*Hammond v. Brown*, 323 F.Supp. 2d 326 (N.D. Ohio 1971) ...................................................... 20

*In re Edward S. Smith*, 656 F.2d 1101 (5th Cir. 1981) ........................................................... passim

*United States v. Anderson*, 55 F. Supp. 2d 1163, (D. Kan. 1999) ........................ 8, 14, 16, 20, 21

*United States v. Briggs*, 514 F.2d 794 (5th Cir. 1975) ............................................................ passim

*United States v. Chadwick*, 556 F.2d 450 (9th Cir. 1977) ............................................................. 8

*United States v. Kenneth Lay*, CR-H-04-25 (S.D. Tex.) ............................................................... 19

*United States v. Richards*, 204 F.3d 177 (5th Cir. 2000) ............................................................. 16

*United States v. Saimiento-Rozo*, 676 F.2d 146 (5th Cir. 1982) ................................................. 16

*United States v. Sudeen*, 434 F.3d 384 (5th Cir. 2005) .............................................................. 16

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ................................................................... 2, 9

## Other Authorities

United States Attorney Manual ("USAM") ........................................................................... 11, 17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CR No. 3:04-CR-240-G |
| | § | |
| HOLY LAND FOUNDATION | § | |
| FOR RELIEF AND DEVELOPMENT | § | |
| also known as the "HLF"(1) | § | |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMED EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| MUFID ABDULQADAR (7) | § | |
| ABUDULRAHAM ODEH (8) | § | |

**INTRODUCTION**

This motion arises out of the government's public identification of petitioners, the

Islamic Society of North America ("ISNA") and the North American Islamic Trust ("NAIT"), as

"unindicted co-conspirators and/or joint venturers" in an appendix to its May 29, 2007 pre-trial

brief in the above-captioned case.

In the Fifth Circuit, the government is generally prohibited from identifying unindicted

co-conspirators by name. *In re Edward S. Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981) ("[T]he

liberty and property concepts of the Fifth Amendment protect an individual from being publicly

and officially accused of having committed a serious crime, particularly where the accusations

gain wide notoriety."); *United States v. Briggs*, 514 F.2d 794, 798 (5th Cir. 1975). This well-

established rule reflects the Circuit Court's recognition that "no legitimate governmental interest

is served by an official public smear of an individual when that individual has not been provided

a forum in which to vindicate his rights." *Smith*, 656 F.2d at 1106. The government violated

settled Fifth Circuit law when it took the unusual step – contrary to Department of Justice policy – of identifying petitioners as unindicted co-conspirators in this terrorism-related prosecution. With complete disregard for petitioners' Fifth Amendment rights, the government applied to them "a stigma, an official branding," while at the same time denying them any forum in which to defend themselves or clear their names.  *Briggs*, 514 F.2d at 798 (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

Petitioner ISNA is this nation's largest mainstream Muslim community-based organization.  Petitioner NAIT is a charitable trust that holds title to religious properties and facilitates the ability of Muslims around the country to practice their faith.  Neither ISNA nor NAIT condones any acts of terrorism.  The government's characterization of each organization as part of a criminal conspiracy to support a designated terrorist organization has profoundly harmed their reputations and has had deeply negative consequences for their lawful missions and activities: promoting the participation of American Muslims in this country's religious, civil and political life.

The law of this Circuit requires that any justification the government may offer for "stigmatizing private citizens as criminals while not naming them as defendants" must rise "to the dignity of a substantial interest."  *Briggs*, 514 F.2d at 804.  The bar is high because, in addition to petitioners' reputational interest, the government's action implicates core principles the Fifth Amendment protects: the presumption of innocence and the right of an accused to defend against the government's allegation of criminal conduct.  Courts find government-imposed stigma especially suspect and offensive when the charge is for a crime as serious,

inflammatory and notorious as the government alleges in this case.  The government had no legitimate interest, let alone a substantial one, for publicly stigmatizing petitioners as it did here.

Based on unequivocal Fifth Circuit precedent, the government violated petitioners' Fifth Amendment rights when it publicly branded them as criminals.  Petitioners respectfully request that this Court (1) declare the government's public naming of petitioners as unindicted co-conspirators and/or joint venturers to be a violation of petitioners' Fifth Amendment rights; (2) order the expunging of petitioners' names from any public document filed or issued by the government that identifies petitioners as unindicted co-conspirators; (3) enjoin the government from identifying petitioners as unindicted co-conspirators and/or joint venturers in any context other than that specifically permitted by the Court; and (4) order such other relief as the Court may deem just and equitable to remedy and prevent the government's violations of petitioners' Fifth Amendment rights.

## PETITIONERS

### Petitioner ISNA

Petitioner ISNA is a non-profit organization that was founded in 1981 and represents approximately 100,000 Muslims in North America, the majority of whom are in the United States.  Declaration of Ingrid Mattson, President of ISNA, dated June 17, 2008, and attached hereto as Appendix A ("Mattson Decl."), ¶ 6, App. 0004.  ISNA's mission "is to provide an open, pluralistic platform for presenting Islam, supporting American Muslim communities, developing educational, social and outreach programs and fostering good relations with other religious communities, and civic and service organizations."  Mattson Decl. ¶¶ 6-7, App. 0004.

Petitioner ISNA accomplishes its mission through a number of means.  It provides educational resources and programs to ISNA members and the broader community through an annual convention and regional conferences.  Mattson Decl. ¶¶ 9-10, App. 0005.  ISNA engages in interfaith dialogue with other mainstream religious organizations and social policy groups.  Mattson Decl. ¶ 8, App. 0004.  Working with government agencies like the Department of State, the Department of Justice ("DOJ"), the Department of Homeland Security, and the Federal Bureau of Investigation ("FBI"), among others, ISNA "seeks to ensure freedom, eradicate prejudice, and create a society in which Muslims live peacefully and prosper alongside other Americans."  Mattson Decl. ¶¶ 8, 11, App. 0004-0005.  ISNA also aims "to help law enforcement agencies do their work with the greater effectiveness that comes from an understanding of, and sensitivity to, the American Muslim community."  Mattson Decl. ¶ 24, App. 0010.

Petitioner NAIT

Petitioner NAIT, an Indiana non-profit corporation, is a "waqf," which is "the historical Islamic equivalent of an American trust or endowment."  Declaration of Muzammil H. Siddiqi, Chairman of NAIT, dated June 17, 2008, and attached hereto as Appendix B ("Siddiqi Decl."), ¶¶ 5-6, App. 0084-0085.  NAIT holds in trust titles to mosques, Islamic centers, schools and other real estate belonging to Muslim communities across this nation, enabling these communities to safeguard and pool their assets in accordance with Islamic principles and U.S. law.  Siddiqi Decl. ¶¶ 5-7, App. 0084-0085.  Petitioner NAIT also develops Islamic financial products that address the investment and financial needs of the American Muslim community; it

has established and sponsored SEC-registered mutual funds that invest in companies on U.S. stock exchanges that comply with Islamic principles.  Siddiqi Decl. ¶ 8, App 0085.

## BACKGROUND

On July 27, 2004, the DOJ announced that a federal grand jury had issued a forty-two count indictment against the Holy Land Foundation for Relief and Development ("HLF") and seven individual defendants.  The indictment charged the defendants with providing material support to Hamas, a designated foreign terrorist organization.  Indictment, *United States v. Holy Land Foundation for Relief and Development et al*., 3:04-cr-00240 (Docket Item 1) ¶¶ 12-22.  Other charges included conspiracy, providing funds, goods and services to Hamas as a specially designated terrorist, money laundering and filing false income tax returns.  Indictment ¶¶ 19-36.

Neither the Indictment nor a Superseding Indictment filed on November 30, 2005, charged the HLF defendants with providing support directly to Hamas.  Superseding Indictment, *United States v. Holy Land Foundation for Relief and Development et al*., 3:04-cr-00240 (Docket Item 233).  The Superseding Indictment alleged that HLF provided charitable donations to Palestinian families and children related to members of Hamas.  Superseding Indictment, Count One ¶ 5.  It also alleged that the defendants provided support to "zakat committees," charitable entities that provide humanitarian services, which in turn allegedly had connections to Hamas. *See, e.g.*, Superseding Indictment, Count One ¶¶ 3, 9, 11.  The zakat committees were not themselves designated supporters of terrorism.  Both the Indictment and the Superseding Indictment referred to co-conspirators "known and unknown" to the grand jury and did not identify any co-conspirator by name or as numbered John or Jane Does.

The first time the government referred to specific unindicted co-conspirators (including petitioners) in the HLF case, it did so publicly and by name.  In its May 29, 2007 pre-trial brief, the government asserted that the HLF defendants had engaged in a criminal conspiracy to support Hamas with "a host" of individuals and entities, and attached a list of 246 different names it referred to as "unindicted co-conspirators and/or joint venturers."  Government's Trial Brief, *United States v. Holy Land Foundation for Relief and Development*, 3:04-cr-00240 (Docket Item 656) ("Gov't Trial Brief") at p. 31 and Attachment A.  Petitioners were named on this list as members of "the U.S. Muslim Brotherhood."  Gov't Trial Brief at Attachment A.

The government provided no explanation, either in its sixty-three page brief, or in public statements, for its description of petitioners as unindicted co-conspirators.  Petitioners ISNA and NAIT were both shocked by the government's decision to name them as unindicted co-conspirators because they had not criminally conspired with the defendants or anyone else, and because they had previously been told by the government that it did not consider them to have done wrong.  Declaration of Daniel A. Reinberg, counsel for NAIT and ISNA, dated June 15, 2008, and attached hereto as Appendix C ("Reinberg Decl."), ¶¶ 4-6, App. 0111-0112; Mattson Decl. ¶ 13, App. 0006; Siddiqi Decl. ¶ 9, App. 0086.

In discussions with petitioners' counsel after the government filed its pre-trial brief, the government confirmed that it did not believe either ISNA or NAIT had engaged in wrongdoing. Reinberg Decl., ¶¶ 4-5, App. 0111 (both before and after the government filed its pre-trial brief, government representatives, including the lead HLF prosecutor, told petitioners' counsel "that ISNA and NAIT were not subjects or targets in the HLF prosecution or in any other pending investigation.").  The lead HLF prosecutor explained to petitioners' counsel that "the

government's public designation of ISNA and NAIT was a legal tactic" intended to permit the introduction of hearsay evidence.  Reinberg Decl. ¶ 8, App. 0112 and Ex. A, App. 0114-0117.  In July 2007, the lead prosecutor apologized for the injuries that petitioners had suffered as a result of the government's actions and agreed to file an amended pleading to clear petitioners' names. Reinberg Decl. ¶ 8, App. 0112, and Ex. A, App. 0114-0117.  Later, the lead prosecutor expressed concern that he might not be able to refer to alleged co-conspirators if he filed the amended pleading ISNA and NAIT requested.  Reinberg Decl. ¶ 11, App. 0112-0113.  Despite repeated requests from petitioners' counsel, no amended filing was made.  Reinberg Decl. ¶ 11, App. 0112-0113; Mattson Decl. ¶¶ 17 and 26, App. 0007 and 0011; Siddiqi Decl. ¶ 18, App. 0088.

As a result of the government's actions, petitioners have been subjected to widespread notoriety and there has been a profoundly harmful effect on their reputations and their ability to carry out their lawful social service and religious missions.  Numerous media outlets have carried stories reporting that ISNA has been accused of supporting terrorism.  Mattson Decl. ¶¶ 20-21, App. 0007-0008 (describing articles and blogs).  In addition, ISNA's interfaith partners have been criticized in the media for working with ISNA.  Mattson Decl. ¶ 22, App. 0008-0009. ISNA's historically "open, collaborative" relationships with federal and government agencies, including the Department of Homeland Security, the Department of State, the DOJ's Civil Rights and Voting Rights divisions, and the FBI, have now become controversial.  Mattson Decl. ¶¶ 11, 20-23, App. 0007-0009.  Among others, the FBI and the DOJ's Civil Rights and Voting Rights divisions have come under attack for their outreach and education efforts at ISNA's national convention, which tens of thousands of American Muslims attend.  Mattson Decl. ¶¶ 9 and 25,

App. 0005 and 0010-0011.  The damaging consequences of the government's conduct impact all areas of ISNA's work.

Mainstream media and other outlets have also reported that the government has charged NAIT of conspiring with a designated terrorist organization.  Siddiqi Decl. ¶¶ 16-17, App. 0087-0088.  The government's stigmatizing of NAIT has had a detrimental effect on its name and reputation.  Siddiqi Decl. ¶ 18, App. 0088 ("The government's decision to list NAIT as an unindicted co-conspirator has jeopardized NAIT's reputation, its standing in the American Muslim community, and its ability to fulfill its mission.").

Petitioners are not party to the HLF criminal proceedings and their only means of clearing their names is through this motion for equitable relief.

## ARGUMENT

**I.    THE GOVERNMENT VIOLATED PETITIONERS' FIFTH AMENDMENT RIGHTS WHEN IT PUBLICLY NAMED THEM AS UNINDICTED CO-CONSPIRATORS.**

In two seminal cases followed by every other Circuit or lower court to have addressed the issue, the Fifth Circuit has held that the government generally may not identify unindicted co-conspirators by name.  *Briggs*, 514 F.2d at 796; *Smith*, 656 F.2d at 1101;[1] *see also United States v. Chadwick*, 556 F.2d 450, 450 (9th Cir. 1977) (following *Briggs*); *Application of Jordan*, 439 F.Supp. 199 (S.D. W.Va. 1977) (same); *Delpit v. Beckner*, 481 F. Supp. 42, 43 (M.D. La. 1979) (same); *United States v. Anderson*, 55 F. Supp. 2d 1163, 1167-68 (D. Kan. 1999) (following *Briggs* and *Smith*).  As noted above, the general rule reflects the Circuit Court's recognition that

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit prior to October 1, 1981.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).  Consequently, *Briggs* and *Smith* are binding precedent in the 11th Circuit.

"no legitimate governmental interest is served by an official public smear of an individual when that individual has not been provided a forum in which to vindicate his rights."  *Smith*, 656 F.2d at 1106.  The Fifth Circuit's general prohibition, applied to petitioners' case, is grounds alone for the relief petitioners seek.

*Briggs* involved a high-profile federal indictment of individuals charged with conspiracy to disrupt the 1972 Republican National Convention through riots and violence.  514 F.2d at 796. The indictment was against seven defendants and also named three unindicted individuals as co-conspirators.  *Id*.  Before trial, the three unindicted co-conspirators petitioned the district court for an order expunging their names from the indictment.  The district judge denied the petition without a written opinion or statement, although in colloquy he stated his decision was based on the government's argument that petitioners were not named defendants and lacked standing.  The Fifth Circuit reversed.  According to the Fifth Circuit, "a person's good name, reputation, honor, or integrity" is entitled to constitutional protection against official government conduct, *id*. at 797 (quoting *Wisconsin*, 400 U.S. at 436), and the government violates the Fifth Amendment when it brands a person an alleged felon without recourse.  *Briggs*, 514 F.2d at 798.

*Briggs* found a violation of the due process rights of unindicted co-conspirators in the context of grand jury indictments,[2] *id*. at 803, but in *Smith*, the Fifth Circuit expanded its holding to cover documents filed by federal prosecutors.  656 F.2d at 1106.

*Smith* arose out of a two-year investigation by the Dallas U.S. Attorney's Office of bribery and related offenses at the Army and Air Forces Exchange Service.  *Id*. at 1101.  The

---

[2] In fact, the government's conduct in petitioners' case is worse than in the grand jury indictment context precisely because the government skirted the grand jury's protective function "of serving as a shield for the citizen against baseless charges of crime and from misuse of power by prosecutor and court."  *Briggs,* 514 F.2d at 803.

Assistant U.S. Attorney ("AUSA") secured multiple convictions and obtained two guilty pleas from an entity called Churchill Sales Co. For the Churchill plea hearings, the AUSA prepared and filed resumes that summarized the facts and specifically named one individual – the petitioner, Smith – as an employee who had been bribed. Following each plea hearing, the media carried stories reporting on the AUSA's uncharged allegation of bribery against Smith. *Id*. at 1104. After months of adverse publicity, Smith filed motions asking the court either to strike any reference to his name from the government documents or to seal the proceedings' records. *Id*. at 1104. Smith argued that his name and reputation had been harmed in violation of the Constitution and asked the court to exercise its equitable power to grant relief because he had no other means of redress or of holding the AUSA accountable. The district court judge denied the petitioner's motion. The Fifth Circuit reversed.

In reversing the district court, the Fifth Circuit specifically rejected the government's argument that *Briggs* should be limited to the grand jury context. The Court wrote,

> We can think of no reason to distinguish between an official defamation originating from a federal grand jury or an Assistant United States Attorney. The *Briggs* decision would be rendered meaningless if it could be so easily circumvented by the actions of an Assistant United States Attorney.

*Smith,* 656 F.2d at 1106. The Fifth Circuit concluded that the AUSA's actions violated a core Fifth Amendment principle:

> The presumption of innocence, to which every criminal defendant is entitled, was forgotten by the Assistant United States Attorney in drafting and reading aloud in open court the factual resumes which implicated the Petitioner in criminal conduct without affording him a forum for vindication.

*Id*. at 1107.

*Briggs* and *Smith* form the basis for a DOJ policy that warns U.S. Attorneys, "there is ordinarily 'no legitimate governmental interest served' by the government's public allegation of wrongdoing by an uncharged party, and this is true '[r]egardless of what criminal charges may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future.'"  United States Attorney Manual ("USAM") 9-27.760, *Limitation on Identifying Uncharged Third-Parties Publicly* (citing *Smith,* 656 F.2d at 1106-07).  This guiding principle is part of DOJ's *United States Attorney's Manual*, which contains a comprehensive set of policies and procedures applicable to all U.S. Attorneys' Offices around the country.  The *Manual* further cautions, "[i]n all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third-parties" and it expressly cites to *Briggs* and *Smith* when it states, "any legitimate governmental interest in referring to uncharged third-party wrongdoers can be advanced through means other than those condemned in this line of cases."  USAM 9-27.760.

The government's naming of petitioners as unindicted coconspirators violated settled law in this Circuit as well as the Justice Department's own internal guidelines.  Its actions created the wrongful impression, which has now become widespread, that petitioners had engaged in criminal activity.  As described in greater detail below, *infra* pp. 12 to 14, the government *itself* knew this impression was entirely unjust and inaccurate because its own representatives said the "government possessed no evidence of wrongdoing by ISNA and NAIT" and "did not consider ISNA and NAIT to be criminal co-conspirators."  Reinberg Decl. ¶¶ 4 and 11, App. 0111-0113; Mattson Decl. ¶¶ 13 and 14, App. 0016; Siddiqi Decl. ¶¶ 10-11, App. 0086.

As a result of the government's conduct in identifying petitioners ISNA and NAIT, it has

damaged their reputations and good names in violation of their Fifth Amendment liberty

interests.  *Briggs*, 514 F.2d at 798 (individual's liberty interest is "adversely affected" if the state

makes "any charge against him that might seriously damage his standing and associations in his

community") (citing *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972)).  Reports of the

government's blacklisting of petitioners have been widespread and are ongoing.  *See, e.g.*, Greg

Krikorian, *Terrorism Trial Begins This Week for Islamic Charity*, L.A. Times, July 23, 2007,

*attached in* Mattson Decl. Ex. B, App. 0028 (the HLF case "has drawn special attention from

inside and outside the U.S. Muslim community" for naming unindicted co-conspirators like

ISNA that are "long-established and U.S.-based organizations engaged in traditional lobbying

efforts"); Bret Stephens, Op-ed, *Homeland Security Newspeak*, Wall Street Journal Online, May

27, 2008, *attached in* Mattson Decl. Ex. C, App. 0032 ("[f]or the record, the ISNA was named an

unindicted co-conspirator" with HLF, which is "alleged to have had ties with Hamas"); *see also*

Joe Kaufman, *Reforming Terror*, Front Page Magazine, May 26, 2008, *attached in* Siddiqi Decl.

Ex. A, App. 0093 (alleging NAIT supports a designated terrorist organization).

Petitioner ISNA has suffered public disparagement and has been vilified as a supporter of

terrorism.  *See, e.g.*, Rod Dreher, *The Muslim Brotherhood is here*, Pittsburgh Trib. Rev. Sept.

16, 2007, *attached in* Mattson Decl. Ex. B, App. 0017 (stating that court documents in HLF case

indicate ISNA is part of "jihad against America by nonviolent means"); Diana West, Op-ed,

*Ramadan Revisionism, Who's Checking at the White House*, Washington Times, Oct. 5, 2007,

*attached in* Mattson Decl. Ex. C, App. 0035 ("This year, the Justice Department officially

labeled [ISNA] as a U.S. branch of the Muslim Brotherhood, the movement aiming to establish a

global Islamic empire."). Similarly, some media outlets and blogs have suggested that the government's decision to name petitioner NAIT implies it is related to or supportive of, terrorist organizations. Siddiqi Decl. ¶ 16, App. 0087; *see* Jeff Mosier, *Order Extended Against Muslim Day Protester: Judge Weighs Temporary Injunction After Six Flags Event*, Dallas Morning News, Oct. 30, 2007 (identifying NAIT as an unindicted co-conspirator and stating that a Florida-based activist had initiated a campaign to inform the public of NAIT's "connections to Middle East terrorist groups"); Rod Dreher, *Islamophobia: Who are the real victims?*, Dallas Morning News, July 16, 2007 (citing government's naming of NAIT as an unindicted co-conspirator as evidence that NAIT is "closely associated with extremist ideology") (articles attached in Siddiqi Decl. Ex. B, App. 0102).

Because of the government's conduct, petitioner ISNA's ability to carry out its social service, educational and interfaith outreach missions has been significantly impaired. Mattson Decl. ¶¶ 19-25, App. 0007-0010 (describing harm caused by government conduct to each area of ISNA's work). Petitioner NAIT has also suffered deep harm to its reputation and mission. Siddiqi Decl. ¶ 17, App. 0087-0088 ("The government has effectively convicted [petitioner] NAIT – or at least saddled it with an accusation of terrorism – without ever having to charge it with a crime, produce any evidence, or prove its case to a judge or jury.").

The damage to petitioners' reputations and good name will persist unless and until the injury is affirmatively remedied. *Briggs*, 514 F.2d at 799 (reputational injury continued as long as the official document that caused it remained on the records of the district court and of the Department of Justice and "unretracted in libraries and depositories"). Under *Briggs* and *Smith*

the government violated petitioners' Fifth Amendment rights and this Court should grant the relief petitioners seek.

## II.     NONE OF THE INTERESTS THE GOVERNMENT HAS ASSERTED JUSTIFIES THE GOVERNMENT'S DECISION TO PUBLICLY IDENTIFY PETITIONERS AS UNINDICTED CO-CONSPIRATORS.

Any justification the government may offer for its public naming of petitioners ISNA and NAIT must meet the rigorous test set forth by the Fifth Circuit in *Briggs*: the government must show (i) a "substantial interest" in the public naming, and (ii) that it could not achieve that interest through less injurious means. *Briggs*, 514 F.2d at 804-05. *See also Smith*, 656 F.2d at 1106-07; *Anderson*, 55 F.Supp. 2d at 1167-68. When it identified petitioners as unindicted co-conspirators in May 2007, the government provided no justification either to this Court or on the public record. Later, in July 2007, the lead prosecutor told petitioners' counsel that ISNA and NAIT were named as a legal tactic, for purposes of an exception to the hearsay rule. Reinberg Decl. ¶ 5, App. 0111.[3] Later still, in a September 2007 brief,[4] the government offered three additional justifications for naming third parties as co-conspirators. None of these justifications arises to the level of a legitimate interest, let alone a substantial one.

The facts in each of petitioners' cases show that the government did not have a basis for naming them as unindicted co-conspirators in its pre-trial filing. During the government's

---

[3] *See also* Michael Isikoff and Mark Hosenball, *An Unwelcome Guest*, Newsweek, Nov. 29, 2007, Mattson Decl. Ex. F, App. 0053 (according to "one senior law enforcement official (who asked not to be named talking about an ongoing case), the listing of ISNA" and other groups "was largely a tactical move by the government").

[4] In the first HLF case, the Council on American Islamic Relations ("CAIR") filed a motion for leave to file an *amicus* brief and the corresponding brief on August 14, 2007 (Docket Item 777). The *amicus* brief asked the court to strike the names of all unindicted individuals and organizations on First and Fifth Amendment grounds, and for any other remedy the court deemed appropriate. The government filed its opposition to CAIR's motion on September 4, 2007 ("Gov't Mem.") (Docket Item 824). CAIR filed a reply brief on September 13, 2007 (Docket Item 850). The court has not ruled on these motions or otherwise addressed the issues presented in them.

investigation of the HLF case, an Internal Revenue Service Special Agent told petitioners'
counsel that "the government possessed no evidence of wrongdoing by ISNA or NAIT."
Reinberg Decl. ¶ 4, App. 0111.  Both ISNA's and NAIT's leadership were, therefore, taken by
surprise when the government nevertheless identified them as unindicted co-conspirators.
Mattson Decl. ¶ 13, App. 0006; Siddiqi Decl. ¶ 9, App. 0085-0086.  At petitioners' request, their
counsel contacted the lead prosecutor, First Assistant U.S. Attorney James T. Jacks, to ask the
government's reason for the designation.  Mattson Decl. ¶ 14, App. 0006; Siddiqi Decl. ¶ 10,
App. 0086.

Mr. Jacks reiterated to petitioners' counsel that the government did not consider ISNA or
NAIT to be "subjects or targets in the HLF prosecution or in any other pending investigation" or
guilty of any wrongdoing.  Reinberg Decl. ¶ 5, App. 0111.  According to Mr. Jacks, the
government's designation of petitioners was "a legal tactic" for evidentiary purposes and he did
not consider ISNA or NAIT to be part of a criminal conspiracy.[5]  Reinberg Decl. ¶¶ 5-6, App.
0111-0112.  Mr. Jacks explained that the government included ISNA and NAIT in the category
of "joint venturers" to invoke an exception to the hearsay rule.  Reinberg Decl. ¶ 5, App. 0111.

The rationale the government provided petitioners' counsel for its public designation of
petitioners – the co-conspirator exception to the hearsay rule – does not meet the Fifth Circuit's
exacting substantial interest test in this case.  This is because courts recognize that "there is an

---

[5] The Fifth Circuit has warned against public branding for tactical reasons:

> There is at least a strong suspicion that the stigmatization of appellants was part of an overall
> governmental tactic directed against disfavored persons and groups.  Visiting opprobrium on
> persons by officially charging them with crimes while denying them a form to vindicate their
> names, undertaken as extra-judicial punishment or to chill their expressions and associations, is
> not a governmental interest that we can accept or consider.

*Briggs*, 514 F.2d at 806.

important distinction between being unqualifiedly identified in a pre-trial document as an 'unindicted coconspirator' and being identified at trial for purposes of" the hearsay exception. *Anderson,* 55 F. Supp. 2d at 1169.  A key distinction is that identification of an unindicted co-conspirator for hearsay purposes does not impute criminality, while identification before trial *does*.  *Briggs*, 514 F. 2d at 805 (distinguishing between valid government interest in alleged co-conspirator's testimony at trial where there is "no formal adjudication regarding criminality" and identification before trial, when due process concerns are heightened); *see also United States v. Sudeen*, 434 F.3d 384, 390-91 (5th Cir. 2005); *United States v. Richards*, 204 F.3d 177, 202-03 (5th Cir. 2000); *United States v. Saimiento-Rozo*, 676 F.2d 146, 149 (5th Cir. 1982); USAM. 9-11.130 (identifying an individual as a co-conspirator for hearsay purposes does not subject person to the burden of formal accusation).  Because of this distinction, "[t]he mere fact that the government eventually needed legitimately to let the cat out of the bag at trial . . .does not alter the court's conclusion that the movants' pretrial public identification was a violation of due process." *Anderson,* 55 F. Supp. 2d at 1169.  In analyzing this distinction, courts have identified "less injurious" alternatives the government has to safeguard against the pre-trial identification of a third-party as criminal, including filing under seal, protective orders and use of John Doe appellation. *Briggs*, 514 F. 2d at 805.  In petitioners' case, the government unqualifiedly and publicly named ISNA and NAIT as unindicted co-conspirators before trial and did not use any of the less injurious alternatives available to it.

In addition, unlike the government's unilateral pre-trial identification in petitioners' case, identification for hearsay purposes at trial includes the critical safeguard that it is subject to judicial review. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987) (introduction of

evidence under co-conspirator hearsay exception requires judicial finding that: (1) conspiracy existed; (2) each declarant and defendant was a member of the conspiracy; (3) the statement was made during the conspiracy; and (4) that the statement was in furtherance of the conspiracy).[6]

Finally, the government's claim that the hearsay exception justifies its naming of petitioners is undercut by the facts in this case. The record at the first HLF trial shows that the government did not rely on the co-conspirator hearsay exception to introduce evidence related to ISNA or NAIT. Indeed, even before trial, the government's hearsay rationale was demonstrably weak: the government's lengthy pre-trial brief not only fails to contain the kind of factual recitation that would justify the government's invocation of the co-conspirator hearsay exception as to petitioners, it fails to mention petitioners even once. The government's hearsay justification is not legitimate let alone substantial. To allow the government's actions to stand in these circumstances "would be intolerable to our society." *Id*. at 806.

In September 2007, the government filed a brief, in response to another unindicted co-conspirator, that identified three additional justifications for its public naming. Gov't Mem. (Docket item 824). In previous cases, the Fifth Circuit has rejected each of these additional justifications because none arises to the level of a legitimate interest, let alone a substantial one. The government's first reason for its public designation of unindicted co-conspirators is "to provide greater clarity to the Court and the defense regarding the complexity and magnitude" of the conspiracy it alleges against the HLF defendants. Gov't Mem. at 5, 24-25. This justification

---

[6] Similar safeguards also protect unindicted co-conspirators in the other context in which courts permit public naming, in a bill of particulars. As with the hearsay exception, it is the judge who decides whether the government has to provide a bill of particulars, what information it may contain, and whether the "public impact may be tempered by protective orders" or an order to file under seal. *Briggs*, 514 F.2d at 805. Even if a judge does not order the bill of particulars to be filed under seal, the U.S. Attorney Manual specifically instructs prosecutors to "seek leave to file such documents under seal." USAM 9-27.760.

was expressly rejected by the Fifth Circuit in *Briggs*.  According to the Circuit Court, the government is barred from naming an unindicted co-conspirator "in order to prove, or facilitate the proof" of the named defendants' alleged conspiracy, even if the government's chances of securing convictions is "increased by attributing to the named defendants the acts of a greater number of persons."  *Briggs*, 514 F.2d at 805.  As the Court explained further, the government could achieve its goal through an alternative less injurious to an alleged unindicted co-conspirator: it could either introduce evidence at trial or use the John or Jane Doe appellation. *Id*.

The government's second argument is actually an example of the very reason courts *disfavor* the naming of unindicted co-conspirators.  According to the government, it wanted to identify those individuals and organizations that it intended to show at trial were part of the larger "Hamas-affiliated network."  Gov't Mem. at 24-25.  Assuming, for the sake of argument only, that the government did believe petitioners were part of a vast conspiracy, the Fifth Circuit has explained that it still may not brand entities like petitioners as criminal supporters of a government-designated terrorist organization without the probable cause required by the Constitution.  *Briggs*, 514 F.2d at 805 ("Obviously, if there was no probable cause, [petitioners] should not have been named as conspirators indicted or unindicted.").

In petitioners' case, the government has itself confirmed there is no probable cause.  Two different government representatives, including Mr. Jacks, told petitioners' counsel that there was no evidence to show either ISNA or NAIT engaged in wrongdoing.  Reinberg Decl. ¶¶ 4-11, App. 0111-0113.  Mr. Jacks, in fact, apologized to petitioners' counsel for the problems caused by the government's designation and agreed to file an amended pleading with this Court to

correct the public misperception that petitioners were part of a criminal conspiracy.  Reinberg

Decl. ¶¶ 6-11, App. 0111-0113.  Although he has failed to file the amended pleading, nothing in

Mr. Jack's interactions with petitioners' counsel, or in the government's case during the first

HLF trial, casts doubt on the government's original representations.

The government's final argument is its most spurious one.  It states that, because of "the

complexity and range" of the evidence to be presented at trial, the government decided that

providing the names instead of anonymous numbers "would be less confusing to this Court and

to the Defendants."  Gov't Mem. at 25.  The government does not explain why it thinks the

Court and the HLF defendants differ from other courts and other defendants in cases in which

complex conspiracies are alleged and in which unindicted co-conspirators are not named.  *See,*

*e.g.*, *United States v. Kenneth Lay*, CR-H-04-25, S.D. Tex., Houston Division (in prosecution of

former Enron executives, government list of 114 unindicted co-conspirators was sealed).  Nor

does it explain why, even if it were necessary to provide the court with names (and, as discussed

above, in petitioners' case it could not be), the government did not do so under seal, a less

injurious alternative that would protect an alleged co-conspirator's Fifth Amendment rights.  No

interest the government has identified or can identify justifies its wrongful public designation of

petitioners.

**III.    THIS COURT HAS THE AUTHORITY TO REMEDY THE GOVERNMENT'S VIOLATION OF PETITIONERS' FIFTH AMENDMENT RIGHTS BY GRANTING PETITIONERS EQUITABLE RELIEF.**

This Court has the authority to grant the relief the Fifth Circuit ordered in *Smith*:

"completely and permanently obliterate and strike from the records" in the HLF case any

reference to petitioners ISNA and NAIT as unindicted co-conspirators "so that such references

may not be used as a public record to impugn the reputation of" petitioners.  656 F.2d at 1107.

As long as petitioners remain publicly identified as uncharged criminal co-conspirators, the

injury to their names and reputations will persist.  Mattson Decl. ¶ 26, App. 0011 ("ISNA

continues to suffer as a result of the injuries the government has caused."); Siddiqi Decl. ¶ 18,

App. 0088 ("NAIT's reputation and good name continue to be under the cloud of an official

criminal accusation.").  Petitioners have no other forum in which to vindicate their reputations

"against the opprobrium resulting from being publicly and officially charged . . . with having

committed serious crimes."  *Briggs*, 514 F.2d at 799.

       Expunging petitioners' names from the government's public filings is an appropriate

remedy for the harm that has already occurred to petitioners in this case.  *See Briggs*, 514 F.2d at

807; *Anderson*, 55 F.Supp. 2d at 1168; *Hammond v. Brown*, 323 F.Supp. 2d 326, 358 (N.D. Ohio

1971) (expunging the names of twenty-three unindicted individuals from a state grand jury report

that charged them with responsibility for the Kent State shootings).  Petitioners have repeatedly

asked the government to voluntarily remove their names from the unindicted co-conspirator list

in this case.  Although the government first agreed to do so almost a year ago, it has since failed

to take any action either to correct the record or to remedy the injury it has caused.  Reinberg

Decl. ¶¶ 6-11, App. 0111-0113; Mattson Decl. ¶ 26, App. 0011; Siddiqi Decl. ¶ 18, App. 0088.

The government opposes this motion and petitioners have no basis to believe that the

government will, of its own volition, undo the harm it has caused.  No other remedy is available

to petitioners.

       For similar reasons, petitioners request this Court to enjoin the government from naming

petitioners as unindicted co-conspirators unless it is specifically permitted to do so by the Court.

*Anderson*, 55 F. Supp. 2d at 1168 (public naming of unindicted co-conspirators for hearsay purposes and bills of particulars allowed only in the interest of fair trials and if it does not violate due process).  The government has already shown its willingness to disregard petitioners' Fifth Amendment rights for impermissible tactical reasons.  Even though the government had no legitimate interest in naming petitioners, and even though it had at its disposal less injurious means of achieving any interest it did have, it declined to follow the law of this Circuit and DOJ's own policies in this case.  A repetition of the government's wrongful conduct would cause petitioners ISNA and NAIT irreparable injury; petitioners ask this Court to exercise its equitable power to prevent future harm from the kind of unilateral action the government has already taken.

## CONCLUSION

For the foregoing reasons, Petitioners ISNA and NAIT respectfully request this Court to (1) declare the government's public naming of petitioners as unindicted co-conspirators to be a violation of petitioners' Fifth Amendment rights; (2) order the expunging of petitioners' names from any public document filed or issued by the government that identifies petitioners as unindicted co-conspirators; (3) enjoin the government from identifying petitioners as unindicted co-conspirators in any context other than that specifically permitted by the Court; and (4) order such other relief as the Court may deem just and equitable to remedy and prevent the government's violations of petitioners' Fifth Amendment rights.

DATED: June 18, 2008                     Respectfully submitted,

                                        _/S/_____
                                        Lisa Graybill
                                        Texas Bar No. 24054454

Legal Director
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TEXAS
PO Box 12905
Austin, TX 78711
LGraybill@aclutx.org
Tel: (512) 478-7300 x 116
Fax: (512) 478-7303

Hina Shamsi[*]
State Bar No. NY 2995579
L. Danielle Tully
State Bar No. NY 4334512
Jameel Jaffer
State Bar No. NY 3064201
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
hshamsi@aclu.org
Tel.: (212) 549-2500
Fax: (212) 549-2583

/S/ David Broiles_____
David Broiles, Local Counsel
State Bar No. 03054500
CAGLE AND BROILES
100 N. Forest Park, Suite 220
Ft. Worth, Texas 76102
Tel. (817) 335-3311
Fax: (817) 335-7733

## CERTIFICATE OF SERVICE

I certify that on June 18, 2008, I electronically submitted the following document with the Clerk of Court for the U.S. District Court for the Northern District of Texas, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to individuals who have consented in writing to accept this Notice as service of this document by electronic means.

/S/ Lisa Graybill_____
Lisa Graybill

---

[*]Applications for admission *pro hac vice* for Hina Shamsi, L. Danielle Tully, and Jameel Jaffer are pending before the court.