IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| HOLY LAND FOUNDATION FOR | § | |
| RELIEF AND DEVELOPMENT (1) | § | |
|     also known as the "HLF" | § | NO. 3:04-CR-240-P |
| SHUKRI ABU BAKER (2) | § | |
| MOHAMMAD EL-MEZAIN (3) | § | |
| GHASSAN ELASHI (4) | § | |
| MUFID ABDULQADER (7) | § | |
| ABDULRAHMAN ODEH (8) | § | |

## DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS

SHUKRI ABU BAKER, MOHAMMAD EL-MEZAIN, GHASSAN ELASHI, MUFID ABDULQADER, AND ABDULRAHMAN ODEH, defendants in the above entitled and numbered cause, through their undersigned attorneys, submit these objections to the additional exhibits the government proposes to admit during the testimony of Special Agent Lara Burns.

As noted during court proceedings last Thursday, written objections to government exhibits were not required at the first trial. As a result, defense counsel had to create a list of such objections from scratch. In response to the Court's request, defense counsel agreed to begin compiling a list of its objections based on the list of exhibits the government stated it would seek to introduce through Agent Burns. The government provided a 13-page double-spaced list of such exhibits Friday, September 26, 2008, at 9:56 p.m. Defense counsel began compiling the list of objections immediately thereafter.

This pleading covers as many of the defense's objections to those proposed Government Exhibits (from the list) as it was possible to address in the limited time available. For ease of

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 1

reference, the defense has separated the objections into categories of exhibits to which the

objection at issue applies.  To the extent that there are objections to the remaining exhibits,

defense counsel will either provide those objections tomorrow morning, at the 8:15 a.m.

conference, or will provide the Court with supplemental objections as promptly as practicable.

## I.       THE ELBARASSE SEARCH EXHIBITS.

The government proposes to introduce during Agent Burns' testimony a series of items

seized from the home of Ismail Elbarasse.[1]  Defendants object to these exhibits as hearsay (Fed.

R. Evid. 802), for lack of authentication (Fed. R. Evid. 901), and under Rule 403.  As discussed

below, important to these principles is the fact that all of the Elbarasse documents were created

prior to the date when financial support to Hamas became illegal (January 23, 1995).[2]

### A.       Hearsay.

Elbarasse Search 14, 17, 18, 19, and 22--a series of unsigned, handwritten documents--

and Elbarasse Search 32--a videotape with statements made sometime in the 1980s or early

1990s by persons other than the defendants--are out-of-court statements offered to prove the

truth of the matters asserted in them.  They are therefore hearsay unless defined otherwise under

Rule 801(d) or within a hearsay exception.

The government contends in its trial brief that the exhibits constitute non-hearsay under

the so-called co-conspirator exception to the hearsay rule, Fed. R. Evid. 801(d)(2)(E).  That rule

defines as non-hearsay "a statement by a coconspirator of a party during the course and in

furtherance of the conspiracy."  As the proponent of the evidence under the coconspirator rule,

---

[1] The Elbarasse exhibits to which defendants object are Elbarasse Search 14, 17, 18, 19,
22, and 32.  Defendants do not object to Elbarasse Search 37, 38, and 40, which contain a series
of checks and other financial documents.

[2]  As discussed below, the date that applies to Mr. El-Mezain is even two and one-half
years later:  October 8, 1997.

the government must prove each of the following elements by a preponderance of the evidence: (1) a conspiracy existed; (2) the declarant and the person against whom the declaration is offered were members of that conspiracy; and (3) the statement was made during the course and in furtherance of that conspiracy.  *See, e.g., Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

In determining whether the government has met its burden of proof, "[t]he contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)."  Fed. R. Evid. 801(d)(2); *see, e.g., United States v. Sudeen*, 434 F.3d 384, 390-91 (5th Cir. 2005); *United States v. Richards*, 204 F.3d 177, 202-03 (5th Cir. 2000).

Elbarasse Search 14, 17, 18, 19, 22, and 32 were created before January 25, 1995, the date on which it became illegal to engage in financial transactions with Hamas under Executive Order 12947.  The government cannot establish the existence of a conspiracy before that date, because conspiracy requires an agreement to commit an unlawful act or to commit a lawful act by unlawful means.[3]  The government instead relies on a theory under which some courts-- including the Fifth Circuit--have applied Rule 801(d)(2)(E) where the defendant and the

---

[3] *See, e.g., Beck v. Prupis*, 529 U.S. 494, 501-02 (2000) (civil conspiracy); *Iannelli v. United States*, 420 U.S. 770, 777 (1975) (criminal conspiracy); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1194 (5th Cir. 1995) (civil conspiracy; applying Texas law); *United States v. Burroughs*, 876 F.2d 366, 370 (5th Cir. 1989) (criminal conspiracy).  Because conspiracy by definition involves an agreement of an unlawful character, it is our position that Rule 801(d)(2)(E) cannot apply to statements made during the course and in furtherance of a *lawful* joint venture.  We recognize, however, that the Fifth Circuit has rejected this position, and we raise it here solely to preserve the issue for later review if necessary.

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 3

declarant are engaged in a lawful joint venture.[4]  The lawful joint venture theory under Rule 801(d)(2)(E) rests on "concepts of agency and partnership law."  *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006).  Under this approach, what one joint venturer says during the course and in furtherance of the venture constitutes an admission of the other joint venturers.

To invoke the exception, the government must establish by a preponderance of the evidence that the defendants were engaged in a joint venture (or some other form of agency relationship) with the pre-January 25, 1995 declarants whose out-of-court statements the government offers.  "A 'joint venture' is by definition a 'business undertaking by two or more persons engaged in a single defined project.'"  *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 263 (5th Cir. 2002) (Dennis, J., concurring in part and dissenting in part) (quoting *Black's Law Dictionary* 843 (7th ed. 1999)); *see, e.g., Walker v. Messerschmitt Bolkow Plohm GmBH*, 844 F.2d 237, 241-42 (5th Cir. 1988) (applying Texas law and distinguishing independent contractor from joint venturer).  As the Fifth Circuit has observed,

> Courts and commentators have identified several characteristics of joint ventures.  The parties' intentions are important.  Joint ventures involve joint control or joint right of control, and joint proprietary interests in the subject of the venture.  Both venturers share in the profits, and both have a duty to share the losses.  But of course these elements cannot be applied mechanically.  No one aspect of the relationship is decisive.

*Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (citations omitted).  Analyzing these factors, *Sasportes* found that the district court had erred in finding that a joint venture existed.  *See id.* at 1209.

The cases applying a lawful joint venture approach under Rule 801(d)(2)(E) are consistent with these principles.  In *United States v. Saimento-Rozo*, 676 F.2d 146 (5th Cir.

---

[4] *See, e.g., United States v. Gewin*, 471 F.3d 197, 201-02 (D.C. Cir. 2006); *United States v. Layton*, 855 F.2d 1388, 1399-1400 (9th Cir. 1988); *United States v. Saimento-Rozo*, 676 F.2d 146, 149 (5th Cir. 1982); *United States v. Postal*, 589 F.2d 862, 886 (5th Cir. 1979).

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 4

1982), for example, the defendants were the captain and crewmen of a boat. The government offered the boat's logbook and navigation chart under Rule 801(d)(2)(E) as statements of a joint venturer. The Fifth Circuit found sufficient evidence that the defendants and the declarant were engaged in the joint venture of sailing the boat. The court noted that the boat "could not operate without the active assistance of a crew," and it concluded that "the log book and the navigation chart were properly admitted as statements made in furtherance of the joint venture." *Id.* at 149-50; *see United States v. Postal*, 589 F.2d 862, 886 n.41 (5th Cir. 1979) (same ruling on similar facts). The court's ruling--that the crew members of a boat operate as joint venturers such that the statement of one constitutes an admission of the others under Rule 801(d)(2)(E)--represents a straightforward application of agency principles.[5]

Similarly, in *United States v. Layton*, 855 F.2d 1388 (9th Cir. 1988), the declarant was James Jones, the leader of Jonestown, and the defendant was a member of Jones' religious sect. The district court admitted Jones' out-of-court statements against Layton on the theory that Layton and Jones were engaged in a joint venture to prevent Congressman Leo Ryan--who was murdered on a factfinding mission to Jonestown--from discovering the truth about the conditions there. *See id.* at 1397-98. The court of appeals affirmed. It found that two speeches by Jones warning Ryan to stay away, coupled with a petition to the same effect that both Jones and Layton signed, constituted sufficient evidence that "Jones and Layton were participants in a common enterprise to prevent Ryan from discovering and revealing the truth about the living conditions at Jonestown." *Id.* at 1401.

---

[5] The Fifth Circuit uses a similar analysis in assessing admissibility under Fed. R. Evid. 801(d)(2)(D), which applies specifically to out-of-court statements by an agent. *See, e.g., United States v. Saks*, 964 F.2d 1514, 1525 (5th Cir. 1992) (admission of partner incident to winding up partnership affairs admissible against defendant under Rule 801(d)(2)(D)); *Blanchard v. Peoples Bank*, 844 F.2d 264, 267 n.7 (5th Cir. 1988) (statement of former employee not admissible against employer under Rule 801(d)(2)(D) because made after agency relationship ended).

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 5

These lawful joint venture cases under Rule 801(d)(2)(E) involve common features closely linked to the principles that govern joint ventures and agency law generally.  In each case, the government, as proponent of the evidence, established that defendants and declarants worked  together toward a joint, clearly defined, agreed-upon goal.  The joint venturers consisted of a finite and identifiable group--the ships' crews in *Saimento-Rozo* and *Postal* and the members of Jones' religious community in *Layton*.  The joint venture had a finite duration, limited by its precise goal--completing the voyages in *Saimento-Rozo* and *Postal* and dissuading Congressman Ryan from coming to Jonestown and discovering the truth in *Layton*.  Under the specific circumstances of those cases, it was not unreasonable to treat the declarants as agents of the defendants and to find that that the declarants' out-of-court statements constituted admissions of the defendants.

Here, by contrast, we do not expect the government to present sufficient evidence--particularly evidence independent of the out-of-court statements themselves, as Rule 801(d)(2) requires--to establish that the pre-January 25, 1995 declarants in Elbarasse Search 14, 17, 18, 19, 22, and 32 were engaged in a joint venture with the defendants, or that any other form of agency relationship existed between those declarants and the defendants.  The government must establish by a preponderance that the defendants and the declarants agreed to work together jointly toward a clearly defined common goal.  And it must show that the pre-January 25, 1995 out-of-court statements that it offers were "in furtherance of" such a discrete common goal.

Although a final decision on the admissibility of the out-of-court statements must await the end of the government's case, we expect the government's evidence to show at most that some of the defendants shared with some of the declarants a deep concern for the plight of Palestinians, a desire to end the Israeli military occupation of the West Bank and Gaza, and a

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 6

preference for an Islamist approach to Palestinian governance.  But those shared views are far too general to create a joint venture.  If common views and goals at this level of generality sufficed under Rule 801(d)(2)(E), then, for example, members of the National Rifle Association, or the right to life movement, or even the Republican or Democratic Parties could be found to constitute joint venturers and thus agents of each other, such that a statement by one member in furtherance of the group's common goals would become an admission by all of the others.

To our knowledge, no court other than Judge Fish in the first trial has ever interpreted the "lawful joint venture" theory under Rule 801(d)(2)(E) as expansively as the government seeks to do here.  Such an interpretation--finding that the pre-January 25, 1995 declarants were agents of the defendants based on vague, commonly held views and goals--would stretch Rule 801(d)(2)(E) beyond any recognizable limit.  The Fifth Circuit and other courts have already detached the rule from its core concept of "conspiracy" by finding it applicable to discrete *lawful* joint ventures.  Even as courts have permitted this expansion, however, they have remained faithful to the settled principles that govern joint ventures and other agency relationships.  The government now asks this Court to remove even these limits from the rule.

The government's "lawful joint venture" theory is particularly troubling when applied to anonymous declarants.  *See* Elbarasse Search 14 (unsigned handwritten document), 17 (handwritten document signed by "Seven Up"), 18 (fax line reads "from Islamic Rel Committee"; unsigned handwritten document), 19 (unsigned handwritten document), 22 (unsigned handwritten document).  In affirming the admission of a statement by an unnamed declarant under Rule 801(d)(2)(D)--which, like the lawful joint venture theory under Rule 801(d)(2)(E), rests on agency principles--the Fifth Circuit declared: "It should not be understated, however, that while a name is not in all cases required, a district court should be

presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D)." *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*, 864 F.2d 1171, 1174 (5th Cir. 1989).

In *Davis*, the court found sufficient evidence that the unnamed declarant was an agent of Mobil in light of specific testimony from the plaintiff and two other witnesses that the declarant was a Mobil employee. *See id.* at 1173-74. Similarly, in *Saimento-Rozo* the court found sufficient evidence of agency where the unknown declarant had written in the boat's log and navigation chart and thus was "inescapabl[y]" a member of the crew engaged in the joint venture of sailing the boat. 676 F.2d at 149-50 & n.3.

Here, by contrast, we do not expect the government to present any evidence--particularly evidence independent of the out-of-court statements themselves, as Rule 801(d)(2) requires--to establish an agency relationship between the anonymous declarants in Elbarasse Search 14, 17, 18, 19, and 22 and the defendants.[6] Moreover, there is no evidence that any of the defendants adopted or approved or even saw or read any of the documents for which there is possible author attribution.

### B.    Authentication.

Fed. R. Evid. 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, there is no dispute (and the parties have stipulated) that the Elbarasse Search exhibits were seized during a search of Elbarasse's

---

[6] The hearsay analysis in this part applies to any pre-January 25, 1995 (or, in the case of El Mezain, pre-October 1997), out-of-court statements that the government offers under Rule 801(d)(2)(E), including, for example, statements made at the October 1993 Philadelphia meeting.

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 8

home.  But the government--the "proponent"--claims much more for Elbarasse Search 14, 17, 18, 19, and 22; it claims that these unsigned, handwritten, and in some cases undated documents were written and distributed by members of the so-called "Palestine Committee" in furtherance of a joint venture to promote Hamas.

But the government will not present any evidence showing who wrote these documents, or why, or what became of them after they were written (other than that they ended up at Elbarasse's home).  It will not show that any of the defendants ever received or read the documents or, indeed, that the anonymous author(s) of the documents ever sent them to anyone. The mere fact that these documents were found in Mr. Elbarasse's house is not sufficient to meet this burden.  In short, the government has failed to establish that Elbarasse Search 14, 17, 18, 19, and 22 are "what [their] proponent claims."

### C.      Fed. R. Evid. 403.

The Court should exclude Elbarasse Search 14, 17, 18, 19, 22, and 32 under Rule 403. For several reasons, the exhibits have little probative value and substantial unfair prejudicial effect.  The unsigned, handwritten, and often undated documents are unauthenticated, as discussed above, and appear to have been written before it became unlawful to engage in financial transactions with Hamas.  The videotape--Elbarasse Search 32--never mentions HLF or any of the individual defendants; it was not found in the HLF files and otherwise has no connection to any of the defendants; and it appears to have been created years before Hamas was designated a terrorist group.

The unfair prejudice from these exhibits substantially outweighs their minimal (or nonexistent) probative value.  The jury may well assume, from the fact that the Court has admitted them, that they have some connection to the defendants.  It may similarly assume that

the documents (Elbarasse Search 14, 17, 18, 19, and 22) actually represent the views (and establish the existence) of the so-called "Palestine Committee."  And the videotape contains inflammatory statements about violence that the jury may infer, simply from the exhibit's admission into evidence, have something to do with the defendants.  The Court should therefore exclude the exhibits under Rule 403.

## II.   DOCUMENTS FROM THE ASHQAR SEARCH.

The government's list of exhibits for Agent Burns also includes a document (denominated Ashqar Search 4) obtained by the government during a 1993 search of the residence of Abdelhaleem Ashqar.  The same arguments that have been presented above with respect to the Elbarasse documents apply as well to the fruits of the Ashqar search.

## III.   THE FISA WIRETAP EVIDENCE.

The government proposes to offer through Agent Burns a series of conversations that the government intercepted and recorded under FISA.[7]  The defendants have previously renewed all of their constitutional and statutory objections to the FISA evidence, and they do so again here.

In addition, each defendant objects on hearsay grounds to the admission of wiretapped conversations involving other persons, including the other defendants.  The government relies again on Rule 801(d)(2)(E) to overcome the hearsay objection.  To establish that the intercepted statements fall within Rule 801(d)(2)(E), the government must prove by a preponderance of the evidence (including evidence independent of the statement itself) that a conspiracy existed, that the declarant and the defendants were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy.  *See, e.g., Bourjaily*, 483 U.S. at

---

[7] Abdulqader Wiretap 1, 2; Ashqar Wiretap 1, 2, 3, 4, 6; Baker Wiretap 2, 4, 5, 6, 7, 10, 13, 24, 33, 34, 37, 38; El Mezain Wiretap 1, 2, 4, 6, 7, 8, 10, 11, 13, 27; HLF Wiretap 2; Shabib Wiretap 1, 2; Philadelphia Meeting exhibits.

175-76; *Sudeen*, 434 F.3d at 390-91; *Richards*, 204 F.3d at 202-03.  The government has not met that burden to date and will not be able to meet it.

In addition, those intercepted conversations that occurred prior to January 25, 1995 (and before October 8, 1997, with respect to Mr. El-Mezain) do not qualify as co-conspirators' statements for the reasons set forth in Part I of this Memo, and should therefore be precluded.

## IV.    THE BAKER AND EL MEZAIN DEPOSITIONS AND OTHER STATEMENTS.

The government intends to offer through Agent Burns certain statements made by defendants Baker and El Mezain after HLF was closed.[8]  Defendants request limiting instructions for this evidence.

The government closed HLF and seized all of its assets on December 4, 2001.  As of that date, the object of the conspiracy alleged in the superseding indictment--providing material support to Hamas--was thwarted as surely as if the defendants had been arrested.  We do not expect the government to present any evidence that any conspiracy continued after December 4, 2001.  Accordingly, out-of-court statements made after that date cannot be admitted for their truth under Rule 801(d)(2)(E).  *See, e.g., Lutwak v. United States*, 344 U.S. 604, 615-18 (1953); *Krulewitch v. United States*, 336 U.S. 440, 442-43 (1949); *United States v. Barnes*, 586 F.2d 1052, 1059 (5th Cir. 1978) (statement made by coconspirator after cocaine had been confiscated and conspiracy had ended was inadmissible under coconspirator rule).

We understand that, to the extent the government offers post-December 4, 2001, statements of the defendants for their truth, it will agree to a limiting instruction that the statement can be considered only against defendant who made the statement.  In addition, to the extent a post-December 4, 2001, statement of one defendant refers to another defendant, the

---

[8] Baker Declaration; El Mezain Deposition.

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 11

government will consult with the defense on possible redactions to avoid a *Bruton* problem.  If the parties cannot agree on these points, we will bring the dispute to the Court's attention.

The government purports to offer certain of the defendants' post-December 4, 2001, statements for reasons other than their truth.  At the first trial, for example, the government contended that parts of Mr. Abu Baker's declaration, parts of his deposition, and parts of Mr. El-Mezain's deposition are false.  It offered those statements not for their truth, but to show consciousness of guilt.  Although statements offered solely to show that they are false are non-hearsay under Rule 801(c), the Court should give jury instructions limiting this evidence to the particular defendant who made the allegedly false statement.  The allegedly false statements are irrelevant as to the other defendants, absent some showing of an agreement among the defendants to conceal the matters addressed in the statements.  In any event, the probative value against one defendant of allegedly false statements made by another defendant after December 4, 2001, is substantially outweighed by the unfair prejudice the non-declarant defendant would suffer from their admission without a limiting instruction.

Also, pages 2-6 of the proposed El-Mezain Deposition exhibit should be redacted because they do not represent statements by Mr. El-Mezain, but instead include a list of counsel (including Ms. Hollander's firm and a member thereof) and a list of exhibits.  There is no basis for introducing those pages, as the documents referred to therein are not evidence herein.

## V.     AL ZAYTONIA AND ILA FILISTINE EXHIBITS.

The government's list also includes partial issues of two periodicals, *Ila Filistine* (1, 2, 3, 4 & 5) and *Al Zaytonia* (1 & 2).  All of those proposed exhibits should be excluded because they constitute hearsay, as well as pursuant to Fed. R. Evid. 403.  These seven exhibits are portions of newsletters that date primarily from 1989 or 1990.  Only one, *Al Zaytonia* 2, dates from 1993.

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 12

None of the exhibits represent complete versions of a particular issue of the respective newsletter.

The source of the documents is also unknown.  Based on the exhibit nomenclature and Bates-stamp labeling, they do not appear to have been recovered in any of the searches conducted during the investigation of this case (HLF, Infocom, Ashqar, Elbarasse, or Mushtaha).  In fact, the government appears to have received the partial issues from the plaintiffs in the *Boim* civil litigation.  Their provenance beyond that is unknown.  The government's theory of introduction for all but one, discussed below, is that the Holy Land Foundation is mentioned somewhere in the newsletter, either because the authors of the newsletter urge donations to it or because Holy Land placed an advertisement in the newsletter.  But the government does not just intend to admit the portion specifically addressing HLF, but additional statements by unknown authors about various current events of the time in the Palestinian-Israeli conflict. [9]  Those articles constitute hearsay undiluted by any exception.  Indeed, since they were not recovered from the defendants or any alleged co-conspirators, they are in no different position than any newspaper articles:  inadmissible hearsay.

Also, *Ila Filistine* 3 contains a story containing Shukri Abu Baker's byline.  The government has no evidence, however, that Mr. Abu Baker actually wrote the story--or wrote it as it is printed.  Accordingly, the *Ila Filistine* and *Al Zaytonia* exhibits should be excluded.  Alternatively, under no circumstances should such documents be introduced for their truth.

## VI.    HLF AND INFOCOM SEARCH DOCUMENTS.

The government contends that any document found at HLF or Infocom should be admitted for the truth of its contents.  Therefore, the government intends to admit newspaper

---

[9] Introduction of these hearsay statements will require the defense to introduce evidence to meet the political issues presented.

articles,[10] videos that HLF happened to have in the office,[11] and other documents recovered from HLF or Infocom, but not necessarily generated or adopted by either organization (of any of the individual defendants). [12]  Those exhibits constitute hearsay, and are inadmissible under Rule 403 because their probative value, if any, is minimal, and they would be likely to confuse and mislead the jury, and require "mini-trials" to discredit the information in those articles.[13]

Another group of proposed exhibits, Infocom Search 58-64, constitute letters written by others to CBS News complaining about media reports about HLF in 1993.  Again, these letters are hearsay, lack any relevance or legitimate probative value, and would require additional evidence in order to disprove the false information and allegations included in the initial CBS reports (which are referred to in the letters).  Thus, they should be precluded as well.  Again, in the alternative, they should not be admitted for their truth.

## VII.   THE EL-MEZAIN WIRETAP AND SHABIB WIRETAP EXHIBITS.

### A.   The El-Mezain Wiretap and Shabib Wiretap Exhibits Generally.

The El-Mezain Wiretap exhibits (1, 2, 4, 6, 7, 8, 10, 11, 13 & 27), and Shabib Wiretap exhibits (1 & 2) are also inadmissible for a number of reasons.  El-Mezain Wiretap 1 is a collection of facsimiles to Mr. El-Mezain;  El-Mezain Wiretap 10 is also a facsimile;  the other El-Mezain Wiretap exhibits are recordings of intercepted telephone conversations.  Shabib

---

[10] *See, e.g.,* HLF Search 13 (1993 *New York Times* article authored by Judith Miller); Infocom Search 2 (*Dallas Morning News* article);  Infocom Search 12 (newspaper article); Infocom Search 73 (article about Abu Marzook).

[11] *See, e.g.,* HLF Search 14 (book entitled "Jihadist School" published by the IAP);  HLF Search 29 (a *fatwah* regarding *zakat* for *jihad*);  Infocom Search 7, 8 & 9 (letters written *to* HLF);  Infocom Search 79 (statement by Ahmed Bitawi).

[12] *See, e.g.* Infocom Search 6, report from IAP.

[13]   For example, Judith Miller's reporting has been thoroughly discredited as biased, exaggerated, and, in some instances, simply false.

Wiretap 1 and 2 are also intercepted telephone conversations.  The bases for preclusion are as follows:

(1) *all* of the intercepted recordings and faxes occurred prior to October 8, 1997, the operative date for Count One, which is the only count in which Mr. El-Mezain is charged.  Since the jury at the first trial acquitted Mr. El-Mezain of the Count Eleven conspiracy, it necessarily found that the government's evidence did not suffice to establish Mr. El-Mezain's membership in a conspiracy between 1995 and 1997.  Thus, all pre-October 8, 1997, evidence should be excluded on collateral estoppel and double jeopardy grounds.  In the alternative, the Court should deliver an appropriate limiting instruction directing that such evidence cannot be considered against Mr. El-Mezain for any purpose.

(2) many of the faxes and recordings (including El-Mezain Wiretap 3, 4, 10, 13 & 27, and Shabib Wiretap 1 & 2) occurred prior to January 25, 1995, and therefore are not admissible for the reasons set forth **ante**, at Sections I and III.

(3) El-Mezain Wiretap 4, 8, 13 and 27 should be precluded pursuant to Fed R. Evid. Rule 403  because in each instance their probative value is substantially outweighed by their capacity for unfair prejudice.

**B.      The Faxes Within El Mezain Wiretap 1.**

In addition, the facsimiles should be excluded as well.  El-Mezain 10 is a handwritten document from a person identified only as "Deeb."  It is not addressed to Mr. El-Mezain, and his name does not appear anywhere in the document.  Thus, the fax constitutes hearsay.  Moreover,

DEFENDANTS' OBJECTIONS TO BURNS EXHIBITS – PAGE 15

since it is from an unspecified author (*i.e.*, which "Deeb"?), and not to Mr. El-Mezain, it is not relevant.

As noted above, El-Mezain Wiretap 1 consists of a collection of faxes.  There are a total of 59 separate faxed documents in this 182-page exhibit.  All but ten are newsletters from the IAP, entitled "The Report."  As noted above as well, *all* of the faxes pre-date the operative date for Count One (and Mr. El-Mezain), October 8, 1997.  Also, 41 of the 59 documents were faxed prior to January 25, 1995, and are therefore governed by the analysis set forth in Sections I and III (and inadmissible as a result).

In addition, all of the faxes within El-Mezain Wiretap 1, with the exception of two 1994 HLF press releases and a January 9, 1995, letter from Mr. Abu Baker, are hearsay.  For example, the IAP Reports include merely a survey of news items from the Middle East, and from Israel, the West Bank, and Gaza in particular.  Many of the items are culled from other media sources.  One of the HLF press releases also relates to the aforementioned CBS News reporting, and raises the same issues that render the other proposed exhibits on that topic inadmissible.

The other non-IAP "Report" faxes in El-Mezain Wiretap 1 are (a) three flyers, one announcing a September 1994 telephone conference call, and two others in Arabic (without accompanying translations); (b) a handwritten note not from or addressed to Mr. El-Mezain; (c) a January 26, 1995, Associated Press article;  and (d)  two short messages, and a press release by Hamas, faxed from the *Gaza Press*.   Again, these are simply hearsay not susceptible to any exception.

### C.    El-Mezain Wiretap 27.

El-Mezain Wiretap 27 (which may also be denominated as El-Mezain Wiretap 12) should be precluded for particular reasons as well.  It is clear that the inference the government wishes

the jury to draw from this February 27, 1995, recorded telephone conversation between Mr. El-Mezain and Mr. Odeh is that they discussed possibly "structuring" certain cash deposits by breaking up such deposits in increments less than $10,000.

However, that conversation should be precluded for several reasons. As a threshold matter, again, the conversation occurred prior to October 8, 1997, the effective date for Count One (the only count against Mr. El-Mezain). Concurrently, as explained above, it should be barred on collateral estoppel and double jeopardy grounds. In this context, it is of particular note that Mr. El-Mezain was acquitted of *all* counts charging money laundering (conspiracy and substantive). Thus, the jury necessarily found against the government in regard to such allegations.

In addition, in the double jeopardy context, through this conversation the government would be attempting to convict Mr. El-Mezain of offenses for which he has already been acquitted. Nor could any limiting instruction be sufficient to protect Mr. El-Mezain from the prejudicial impact of such evidence. Consequently, El-Mezain Wiretap 27 should be excluded altogether.

Moreover, independent of those reasons, admission of the conversation would constitute at the very least a prejudicial variance and, potentially, a constructive amendment of the Indictment. The money laundering charges allege a specific theory and means: the enumerated wire transfers from the Northern District of Texas to the institutions in the West Bank and Gaza. Allowing the government to posit another means – structured deposits – would constitute a prejudicial variance or perhaps even a constructive amendment.

Also, the allegations in the Indictment demonstrate that any such discussion of "structuring" would not be relevant to the alleged money-laundering.  It is not the nature of the *deposits* to HLF accounts in New Jersey that the Indictment alleges are part of the money laundering, but rather the *payments* by HLF to institutions overseas.  In that light, any relevance the conversation might possess pales before the unfair prejudice it would generate (making it inadmissible under Rule 403).  That is especially true because the conversation fails to provide the elements of structuring, which requires not just a desire to circumvent reporting requirements, but also "willfulness," i.e., proof that the defendant "acted with knowledge that his conduct was unlawful."  *See Ratzlaf v. United States*, 510 U.S. 135, 136-37 (1994).  *See also id.* at 144 ("currency structuring is not inevitably nefarious").  Accordingly, El-Mezain Wiretap 27 should be excluded.[14]

## VIII.   VIDEOTAPE EXHIBITS.

The defense is in the process of reviewing the videotape exhibits that are among the exhibits the government intends to introduce.  This is a laborious process and the defense will supplement its objections as to these exhibits.  In the interim, Defense counsel object to the relevance of videotape exhibits that were created prior to the designation of Hamas in January, 1995 and after the closure of HLF in December 2001.

## IX.   DEMONSTRATIVE EXHIBITS.

The defense has objections to certain parts of demonstrative exhibits the government intends to introduce through Agent Burns.  Defense counsel are attempting to resolve these

---

[14] The El-Mezain Wiretap exhibits are also inadmissible as to Mr. El-Mezain and Mr. Odeh, as well as the other defendants (Elashi, Abu Baker and Abdulqader) because, to the extent the evidence is proffered as a bad act pursuant to Fed. R. Evid. 404(b), they were not afforded sufficient pre-trial notice.

issues directly with the government.  If the need arises for the Court to make any determinations, we will inform the Court as soon as practicable.[15]

## CONCLUSION

For all the reasons set forth above, it is respectfully submitted that the Court should rule in accordance with the above-stated objections.

Respectfully submitted,

/s/ Theresa M. Duncan
NANCY HOLLANDER
New Mexico Bar Card No. 1185
Email:nh@fbdlaw.com
THERESA M. DUNCAN
New Mexico Bar Card No. 12444
Email: tmd@fbdlaw.com
FREEDMAN BOYD
HOLLANDER GOLDBERG & IVES P.A.
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
Office: 505.842.9960
Fax: 505.842.0697
ATTORNEYS FOR DEFENDANT
SHUKRI ABU BAKER (02)

JOSHUA L. DRATEL
New York Bar Card No. 1795954
AARON J. MYSLIWIEC
New York Bar Card No. 4168670
Law Office Of Joshua L. Dratel
2 Wall St.
3rd Floor
New York, NY 10005
Office: 212.732.0707
Email: jdratel@joshuadratel.com
ATTORNEYS FOR DEFENDANT
MOHAMMAD EL-MEZAIN (03)

---

[15] The defense was also notified Sunday afternoon that the government may change one demonstrative exhibit to a summary exhibit in which case the defense may have additional objections to that exhibit.

LINDA MORENO
Florida Bar 0112283
LINDA MORENO, P.A.
P.O. Box 10985
Tampa, Fl 33679
Office: 813.247.4500
Email: lindamoreno.esquire@gmail.com

JOHN D. CLINE
California Bar No. 237759
JONES DAY
555 California Street, 26th Floor
San Francisco, CA  94104-1500
(415) 626-3939 (Telephone)
(415) 875-5700 (Facsimile)
jcline@jonesday.com (Email)
ATTORNEYS FOR DEFENDANT
GHASSAN ELASHI (04)

MARLO P. CADEDDU
Texas Bar Card No. 24028839
LAW OFFICE OF MARLO P. CADEDDU, P.C.
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Office: 214.220.9000
Fax: 214.744.3015
Email: cadeddulaw@sbcglobal.net
ATTORNEY FOR DEFENDANT
MUFID ABDULQADER (07)

GREG WESTFALL
Texas Bar Card No. 00788646
WESTFALL, PLATT & CUTRER
101 Summit Avenue, #910
Fort Worth, TX 76102
Office: 817.877.1700
Fax: 817.877.1710
Email: westfall@wpcfirm.com
ATTORNEY FOR DEFENDANT
ABDULRAHMAN ODEH (08)

**CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2008, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to

all counsel of record.

 /s/ Theresa M. Duncan
THERESA M. DUNCAN